[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The complaint, dated February 16, 1989 and filed on February 23, 1989, is an action to quiet title to a parcel of land described in a map prepared for Joseph and Gertrude Chesto dated February 10, 1989. (Plaintiffs' Exhibit 8.)
On April 14, 1989, an amended complaint was received and the disputed parcel is described in paragraph 2 of said amended complaint (hereinafter said disputed parcel is referred to as "Parcel A"). CT Page 8523
On July 11, 1969, the plaintiffs acquired title to the property in Brookfield, Connecticut, described in paragraph 1 of their amended complaint, from Benjamin S. Maynard and Gloria E. Maynard, known as 35 Obtuse Road, South (hereinafter "35/O.R.S."). They claimed that they and their predecessors in title have used and enjoyed Parcel A under a claim of right for more than fifteen years prior to the commencement of this action, and that such use and possession has been at all times open, visible, notorious, adverse, exclusive, continuous and uninterrupted. They have thereby claimed to have acquired sole and exclusive title to Parcel A by adverse possession.
Parcel A is situated between plaintiffs' deeded northerly property line and a barbed wire fence that separates the Chestos' property from the property formerly owned by the named defendants, Walter A. Fair and Susan S. Fair. In April of 1986, the company known as Wind Whistle III, Inc. acquired property known as 37 Obtuse Road South (hereinafter "37/O.R.S.") and also Lot 7 Winding Brook Commons Section I. Walter A. Fair and Susan S. Fair were the owners of the corporation stock. The Fairs claim an order discharging from record the lis pendens filed by the plaintiffs against the defendants with the commencement of this action. They also claim injunctive relief and damages. On July 18, 1990, the defendant Fair moved the court to substitute Kenneth M. and Annette H. Herman as party defendants, which the court granted on August 7, 1990. Thereafter, on August 28, 1990, the substituted defendants filed their counterclaim seeking similar relief as the Fairs. The case was tried to the court on July 22, 1992 and briefs were ordered due on July 30, 1992.
The defendant, Walter A. Fair, is a builder who has built in excess of sixty houses and has acquired many building lots. Mr. Fair's professional background is as an engineer, realtor and a builder. On July 2, 1990, the Fairs sold Lot 7 (37/O.R.S.) to the Hermans. Prior to the sale by the Fairs to the Hermans, Mr. Fair constructed a dwelling between May and November of 1986. Mr. Fair testified that the house was designed to take full advantage of the site's privacy. The south side of the house faces the plaintiffs' property. In November or December of 1987, Walter Fair tore down a portion of a barbed wire fence along Parcel A and erected sections of a wooden fence on Parcel A. At the time of sale by Fair to Herman, the Fairs and Hermans escrowed $15,000.00, one-half to be used for legal fees in defending the instant action and the remaining one-half to be paid over to the Hermans if the plaintiffs prevail on its adverse possession claim. Alternatively, the said remaining one-half was to be paid over to the Fairs if the plaintiffs do not prevail on their claim. CT Page 8524
Neither the named nor the substituted defendants in this action have any personal knowledge concerning the Chestos' adverse use of Parcel A during the period between July 11, 1969 and March of 1986 inclusive. No evidence was presented to contradict the plaintiffs' evidence concerning the adverse use of Parcel A during said period. Conversely, the plaintiffs' credible testimony and their supporting exhibits are quite adequate to establish by clear and convincing evidence their claim of adverse possession of Parcel A.
Mrs. Gertrude Chesto testified as follows: She has resided with her husband at 35 Obtuse Road South since July 11, 1969. Prior to the purchase, she walked the property with the seller, including the northerly portion. At that time, there were a row of trees, a post and barbed wire fence running from the road "all the way down. It was not knocked down or broken down. Mr. Maynard pointed out the septic system to me and he pointed out the property. Mr. Maynard lived on the property. The line of trees along side of the fence were mature and the fence looked like it was there for a long time."
She also testified that for years there was corn grown on the other side of the property line and "it didn't extend to Maynard's side . . . no one tried to grow corn on the southerly side of the fence." She was able to show, both through her testimony and with photographs (Plaintiffs' Exhibits 4-1, 4-2,5-1, 5-3 and 5-4) that the property was used by her and her invitees since shortly after acquiring title to the property.
The essential elements of adverse possession are that the claimant shall maintain possession of the property claimed for fifteen years and such possession shall be open and notorious, continuous, visible and exclusive. Whitney v. Turmel,180 Conn. 147, 148 (1990). The Chestos have met this burden. They have resided on the subject property from July 1969 to the present time. This residence has been continuous and includes Parcel A which they have used, maintained as a side yard and also upon which they have maintained and retained their septic system that existed in Parcel A. They have used the side yard which is on Parcel A for playing and picnics. No owner of the adjacent property to the north of the Chestos ever gave permission to them for the use of Parcel A or attempted to oust the Chestos from possession of Parcel A. No evidence was offered to rebut these facts.
Although there was testimony that Mr. Fair and the Chestos attempted to negotiate a settlement of the disputed Parcel A in which the Chestos would move the septic system with his aid, this was not sufficient to overcome the clear and convincing proof of adverse possession which had already vested in the CT Page 8525 Chesto prior to said negotiations.
"`The doctrine of adverse possession is to be taken strictly. [Such a] possession is not to be made out by inference, but by clear and positive proof.' [Citations omitted.] `Clear and positive proof' embodies the same substantive standard as `clear and convincing proof.'" Schulz v. Syvertsen, 219 Conn. 81, 91 (1991). (Citation omitted.) "`[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution . . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.'" Wildwood Associates, Ltd. v. Esposito, 211 Conn. 36, 42 (1989) (Citations omitted.)
"The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. [Citation omitted.] The use is not exclusive if the adverse user merely shares dominion over the property with other users." Roche v. Fairfield,186 Conn. 490, 498 (1982). (Citation omitted.) To establish the plaintiffs' claim of title by adverse possession, it must appear that they and their predecessors, by adverse use of a notorious, exclusive and hostile character and under a claim of right have, for the statutory period, obstructed and excluded the defendants. Schroeder v. Taylor, 104 Conn. 596, 605. "Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it." Paton v. Robinson, 81 Conn. 547, 551 (1909).
"The requirement that an adverse possession be `notorious' in the sense of `being or constituting something that is commonly known: well known' (Webster, Third New International Dictionary) is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice." Robinson v. Meyers, 156 Conn. 510, 518 (1968). "The law designs that the owner shall have ample knowledge on the subject and a full opportunity to assert his claim." Schroeder v. Taylor, supra, 605. CT Page 8526
"Possession is not adverse when it is pursuant to and consistent with the owner's legal or equitable title." New York Annual Conference v. Fisher, 182 Conn. 272, 292 (1980).
With respect to the claim of the Fairs, since the court had granted the defendant Hermans' motion to be substituted as a defendant in this action, without any objection from the Fairs, and the Fairs' desire to remain in the action on their counterclaim, the Hermans should have been added as defendants with the Fairs as opposed to being substituted as the defendants in the action for the Fairs. See Connecticut General Statutes, Sec. 52-107 and 52-111. However, even if the Fairs were still in the action, neither they nor the Hermans have any claim for damages since any damages would depend upon a finding that the Chestos conduct constitutes a trespass. The court does not find any trespass. The court further finds that any other claims (injunctive relief and damages) are moot since the court has already found in favor of the plaintiffs.
Accordingly, judgment shall enter in favor of the plaintiffs, Joseph and Gertrude Chesto.
Rodriguez, J.